[S.F. No. 23505. Mar. 30, 1977.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY,
Respondent;
JOHN MICHAEL GREER et al., Real Parties in Interest.

256

**COUNSEL**

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, and Derald E. Granberg, Deputy Attorney General, for Petitioner.

Robert N. Tait, District Attorney (San Luis Obispo), and Daniel A. Hilford, Deputy District Attorney, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Patrick R. Murphy, Public Defender, Charles H. James, Assistant Public Defender, and Michael J. Oliver for Real Parties in Interest.

Ephraim Margolin and Nicholas Arguimbau as Amici Curiae.

**OPINION**

**MOSK, J.**—The People seek a writ of mandate compelling respondent trial court to permit a district attorney to conduct a prosecution of a serious criminal charge despite the fact the court is convinced the prosecutor suffers from a conflict of interest which might prejudice him against the defendants and undermine his impartial exercise of judgment. The Attorney General asserts that judicial intervention disqualifying the district attorney violates the principle of the separation of powers (Cal. Const., art. III, § 3) by usurping a function reserved to the executive. We conclude the separation of powers contention lacks merit, and that trial courts have the authority to recuse prosecuting attorneys in appropriate circumstances. We further find no abuse of that power by

the trial judge herein, and therefore conclude that the writ should be denied.

Steven Anderson was killed on July 5, 1975, in Contra Costa County. On December 5 the Contra Costa District Attorney filed an information against defendant Rose Anderson (the victim's ex-wife) and defendant John Michael Greer, charging them with murder. The information also alleged, as to both defendants, the "special circumstance" that the murder was carried out pursuant to an agreement to give and accept valuable consideration.

Both before and after the filing of the information defendants sought to have the district attorney disqualified, alleging a conflict of interest arising largely from the employment in the district attorney's office of the victim's mother, Martha Anderson.[1] On January 8, 1976, the superior court granted defendants' motion to recuse the district attorney. The court made its ruling on the basis of evidence in the form of sworn declarations and testimony taken at the time of the preliminary hearing.

As might be expected, the circumstances which gave rise to this unusual order were themselves unusual. Martha Anderson had been employed by the Contra Costa District Attorney as a "discovery clerk" for over a year, and was assigned to the very office in which the prosecution of this case was being handled. Her grief over her son's death was at times made evident to her fellow workers. In addition, the prosecution's theory involves proof of a protracted dispute between defendant Rose Anderson and the victim over the custody of their child, Paul. As grandmother of the child, not only is Martha Anderson admittedly well acquainted with the details of this controversy, but she is scheduled to be a material witness for the prosecution. Moreover, she potentially stands to gain custody of the child if defendant Rose Anderson is convicted; indeed, at the time of the preliminary hearing a contested guardianship proceeding between the two women was pending.

The latter dispute arose when, upon the arrest of Rose Anderson, the police delivered Paul into the custody of Martha Anderson. Defendants contend the arrest was in derogation of an offer made by Rose

---

[1]These efforts included formal written requests to both the Attorney General and the Governor asking that they exercise their power under Government Code section 12550 (fn. 3, *post*) to transfer the prosecution to the Attorney General's office. Both requests were declined.

Anderson's attorney for her voluntary surrender if the district attorney proposed to take her into custody. Evidence was introduced to show that the police acted after consultation with the district attorney's office, and gave the child into the custody of Martha Anderson despite their knowledge of defendant Rose Anderson's arrangements to place him elsewhere. Defendants argue that this incident adds to the appearance of a conflict of interest on the part of the district attorney's office.[2]

The trial court concluded in these circumstances that the district attorney should be disqualified. The court then issued two orders directed to the Attorney General, who had the power to assume the prosecution under Government Code sections 12550 and 12553.[3] The first order, issued on January 8, 1976, in conjunction with the disqualification ruling, cited the Attorney General "to appear" before the court "to show cause why he should not prosecute" the case. Upon the Attorney General's appearance on the order to show cause, the court on January 20 reaffirmed its earlier decision to disqualify the district attorney and issued a second order, directing the Attorney General.to "appear" in court on January 27—the date set for a ruling on defendants' motion to dismiss under Penal Code section 995—and on January 29, the scheduled date of a trial readiness conference. Trial remained set for February 2. However, on January 23 the Attorney General obtained a

[2]In addition to the evidence relating to the victim's mother, testimony was received regarding the victim's widow, a Contra Costa Superior Court typist-clerk. She admitted to copying confidential documents in the court files relating to the custody dispute, and delivering the documents to her husband before his death. Some of the information from those confidential files was allegedly used by the police in their investigation. It is suggested by defendants that the public employment of the victim's widow further disqualifies the district attorney, in that, as clerk, she had frequent contact with members of the prosecutor's staff. Defendants also suggest that her actions as clerk add to the appearance of a conflict of interest on the part of the district attorney. The trial court was in a better position than we are to assess the evidence in this regard. However, it would appear from the record that the connection between defendant's widow and the prosecutor's office was sufficiently attenuated to make the potential conflict, if any, created by her employment and actions secondary to the more evident conflict arising from Martha Anderson's position in the district attorney's office.

[3]Section 12550 provides: "The Attorney General has direct supervision .over the district attorneys of the several counties of the State . . . .

"When he deems it·advisable or necessary in the public interest, or when directed to do so by the Governor, he shall assist any district attorney in the discharge of his duties, and may, where he deems it necessary, take full charge of any investigation or prosecution of violations of law of which the superior court has jurisdiction. In this respect he has all the powers of a district attorney, including the power to issue or cause to be issued·subpenas or other process."

Section 12553 provides in part: "If a district attorney is disqualified to conduct any criminal prosecution within the county, the Attorney General may employ special counsel to conduct the prosecution."

stay of the proceedings pending a decision on his application for an extraordinary writ requiring the trial court to vacate its orders of January 8 and 20.

We divide our review of the writ application into four parts. The first evaluates the Attorney General's claim that the doctrine of separation of powers generally prevents trial courts from disqualifying the designated representatives of the executive branch in criminal cases. Second, we consider whether, even if such power exists, it may be exercised to disqualify a prosecutor on the ground that he suffers a conflict of interest which may prejudice him against the accused. We then reach the question whether the court in this case abused such discretion as it had. Our final concern is the validity of the trial court orders which followed the disqualification order and were directed to the Attorney General.

## I.    *Power of the Trial Court to Disqualify a District Attorney.*

Undeniably there are circumstances in which the participation of a district attorney in a criminal trial as prosecutor would be improper. For example, it would not be proper for such an attorney to prosecute a client or former client, without that client's consent, for a crime "relating to a matter in reference to which [the attorney] has obtained confidential information by reason of or in the course of his employment by such client or former client." (Rules of Prof. Conduct, rule 4-101; *Young* v. *State* (Fla.App. 1965) 177 So.2d 345; *State* v. *Leigh* (1955) 178 Kan. 549 [289 P.2d 774]; *People* v. *Gerold* (1914) 265 Ill. 448, 471-480 [107 N.E. 165, 175-178]; see *Corbin* v. *Broadman* (1967) 6 Ariz.App. 436 [433 P.2d 289]; Annot., 31 A.L.R.3d 953, 963-978.) Nor should a prosecutor try a defendant with whom he is embroiled in civil litigation. (*Ganger* v. *Peyton* (4th Cir. 1967) 379 F.2d 709; *Sinclair* v. *State* (1976) 278 Md. 243 [363 A.2d 468].)

The Attorney General does not defend the foregoing hypothetical prosecutorial conduct, and, absent constitutional considerations, it seems clear a trial court could disqualify the attorney in question.[4] However,

[4]Section 128 of the Code of Civil Procedure provides in part, "Every court shall have power: . . . 5. To control, in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter appertaining thereto . . . ." Although in civil cases the disqualification power of the trial judge has been only suggestively traced to section 128 (see *Meehan* v. *Hopps* (1955) 45 Cal.2d 213, 215 [288 P.2d 267]), the purpose and text of the statute are broad enough to encompass such a power. Furthermore, section 128 has been applied to criminal as well as civil cases. (See *Cooper* v. *Superior Court* (1961) 55 Cal.2d 291, 301 [10 Cal.Rptr. 842, 359 P.2d 274]; *Ligda* v. *Superior Court* (1970) 5 Cal.App.3d 811, 826 [85 Cal.Rptr. 744].)

the Attorney General asserts that the constitutional doctrine of the separation of powers severely restricts the occasions upon which the courts may act to prevent such improprieties. Action by a judge to disqualify a district attorney who proposes to proceed despite an undeniable conflict of interest is said to infringe on the executive power of designating the People's attorney in a criminal prosecution. While the Attorney General allows for some judicial sanctions against improper prosecutorial participation, he contends these remedies are limited to reversal of any resulting conviction and professional discipline of the offending prosecuting attorney. He further argues that any permissible judicial action must be limited to those situations in which failure of the court to act would result in a violation of "minimum due process standards."

Article III, section 3, of the California Constitution provides: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." ■ Judges must be as vigilant to preserve from judicial encroachment those powers constitutionally committed to the executive as they are to preserve their own constitutional powers from infringement by the coordinate branches of government. ■ The cases which have sought to define the boundaries of executive discretion in a prosecutorial context, however, lend little support to the People's attack on the authority of a court to disqualify a prosecutor whose participation at trial would be manifestly improper.

The Attorney General places emphasis on *People* v. *Municipal Court (Pellegrino)* (1972) 27 Cal.App.3d 193 [103 Cal.Rptr. 645, 66 A.L.R.3d 717], and *People* v. *Smith* (1975) 53 Cal.App.3d 655 [126 Cal.Rptr. 195]. *Pellegrino* upheld the district attorney's authority over the decision whether to charge an individual with a criminal offense. Noting the provision that all prosecutions shall be conducted by the authority of the People of the State of California (Gov. Code, § 100, subd. (b)), the Court of Appeal barred a trial court from accepting for filing criminal charges instituted by private citizens without the approval of the district attorney. *Smith* involved a parallel situation, in which a trial court attempted to consummate its own "plea bargain" over the district attorney's objection, by allowing the defendant to withdraw his not guilty plea to the proffered charge and then in effect charging him with a different, unincluded offense to which a guilty plea was accepted. Both cases

enforced the allocation to the executive of the function of determining which persons are to be charged with what criminal offenses.

However, executive control over the charging function, as sustained in *Pellegrino* and *Smith,* is not itself threatened when a trial court disqualifies a district attorney from participation in trial and pretrial proceedings. That disqualification affects only the identity of the state's representative; it does not in itself alter the charges against the defendants. After disqualification of the district attorney, the Attorney General may still choose to enter the case and proceed against the defendants on the same charges under sections 12550 and 12553 of the Government Code.[5]

Furthermore, by emphasizing the executive character of the charging decision the Attorney General overlooks the fact that once the state is ready to present its case in a judicial setting "the prosecutorial die has long since been cast." *(People* v. *Superior Court (On Tai Ho)* (1974) 11 Cal.3d 59, 65 [113 Cal.Rptr. 21, 520 P.2d 405].) In rejecting separation of powers claims similar to those raised here, we have frequently noted that "When the decision to prosecute has been made, the process which leads to acquittal or sentencing is fundamentally judicial in nature." *(People* v. *Tenorio* (1970) *supra,* 3 Cal.3d 89, 94; *Esteybar* v. *Municipal Court* (1971) 5 Cal.3d 119, 127 [95 Cal.Rptr. 524, 485 P.2d 1140]; *People* v. *Superior Court (On Tai Ho) supra,* 11 Cal.3d at p. 65.)

Indeed, a categorical denial of the trial court's authority to ever disqualify a district attorney, far from protecting a constitutional power of the executive, would excise a significant aspect of the judge's traditional power to enforce the law. It has long been established in civil

---

[5]We do not mean to deny that the same conflict of interest which disqualifies a prosecutor from participating in the trial of a criminal case may not also taint the procedure by which the defendant was charged, if the same district attorney participated therein. (See discussion at fn. 8, *post*; see also *Corbin* v. *Broadman* (1967) *supra,* 6 Ariz.App. 436 [433 P.2d 289]; *State* v. *Jones* (1924) 306 Mo. 437 [268 S.W. 83]; Annot., 31 A.L.R.3d 953, 984-986.) Thus, if the trial court determines that a district attorney's participation in the filing of a criminal complaint or the preliminary hearing on that complaint created a potential for bias or the appearance of a conflict of interest, it may conclude that the defendant was not "legally committed" within the meaning of Penal Code section 995, and the information should be set aside. (Cf. *People* v. *Elliot* (1960) 54 Cal.2d 498, 502-503 [6 Cal.Rptr. 753, 354 P.2d 225].) Because that ruling simply denies the accusatory pleading any judicial effect, it raises no issue of interference with the executive charging function. (Cf. *People* v. *Tenorio* (1970) 3 Cal.3d 89 [89 Cal.Rptr. 249, 473 P.2d 993].) The Attorney General himself concedes the "incongruity of ordering the district attorney removed from the prosecution but of not setting aside the information filed by the district attorney."

cases that the court has the power, on motion of a party, to disqualify an opposing attorney from participating in a trial when, for example, the attorney improperly seeks to proceed against a former client. (*Weidekind* v. *Water Co.* (1887) 74 Cal. 386, 388 [19 P. 173]; *Elberta Oil Co.* v. *Superior Court* (1930) 108 Cal.App. 344 [291 P. 668]; *Meehan* v. *Hopps* (1955) *supra*, 45 Cal.2d 213; *Grove* v. *Grove Valve & Regulator Co.* (1963) 213 Cal.App.2d 646, 651-652 [29 Cal.Rptr. 150].) And the Attorney General concedes that in similar circumstances a prosecutorial conflict of interest in criminal cases may require reversal of a conviction in the appellate courts. Yet if the trial judge has no authority to recuse a district attorney, in such a case he could do no more, short of outright dismissal, than helplessly preside over a criminal proceeding which he finds improper and which appears destined for reversal on appeal.[6] Thus, although it is phrased in terms of the separation of powers clause, the argument of the Attorney General that the trial court lacks any disqualification power reduces in dimension to the position that appellate courts are capable of enforcing the law but trial courts are not. Not only does this contention contemplate a waste of judicial resources in futile trials and inevitable reversals on appeal, it is alien to a fundamental premise of our judicial structure, i.e., that trial judges, like appellate courts, are competent to apply the law.

Nor can we accept the argument that before he recuses a prosecutor, the trial judge must first determine that failure to do so would permit a violation of the defendant's basic constitutional rights.[7] In a trial process which, as noted above, is "fundamentally judicial in nature" (*People* v. *Tenorio, supra*, 3 Cal.3d at p. 94), the power of the court under the separation of powers doctrine is not exhausted by the bare enforcement of constitutional guarantees of a fair trial. (See *State* v. *Basham* (1969) 84 S.D. 250, 258-259 [170 N.W.2d 238, 242].) Indeed, those constitutional provisions would seem better served when judges have discretion to

[6]The possibility that upon being confronted with a disqualified prosecutor, a trial judge might as an initial step dismiss the charges under Penal Code section 1385 does not appear to have been considered by either the court below or the parties to this proceeding, and with good reason. Certainly a dismissal under section 1385 is less well adapted to the problem of prosecutorial conflicts of interest, and more intrusive on the executive, than the recusation of a particular prosecutor, which still may allow the executive to designate another representative and continue the cause.

[7]The disqualification of an attorney who attempted to prosecute a former client would, under this theory, be permissible only because required to avoid a violation of defendant's right to counsel. (U.S. Const., 6th and 14th Amends.; Cal. Const., art. I, § 15.) Other prosecutorial conflicts of interest might be proscribed as due process violations. (U.S. Const., 5th and 14th Amends., Cal. Const., art. I, § 7; see *Ganger* v. *Peyton* (4th Cir. 1967) *supra*, 379 F.2d 709.)

prevent even the possibility of their violation. Individual instances of unfairness, although they may not separately achieve constitutional dimension, might well cumulate and render the entire proceeding constitutionally invalid. The trial judge need not delay until the last straw of prejudice is added, by which time it might be too late to avert a mistrial or a reversal. Nor has the Attorney General demonstrated that the performance of any essential executive function requires judges to consciously permit improper prosecutorial participation up to the constitutional limit. In this context, article III, section 3, of the Constitution does not demand trials in which there is no middle ground between absolute executive discretion and constitutionally mandated judicial intervention.

■    This is not to imply that the executive loses all discretion once a criminal proceeding has begun. The executive has general authority to choose who will prosecute the case, and that representative is vested with the traditional powers of prosecutors in the conduct of criminal trials. (Cal. Const., art. V, § 13; Gov. Code, §§ 12550, 12553.) But "when the jurisdiction of a court has been properly invoked by the filing of a criminal charge, the disposition of that charge becomes a judicial responsibility." (Italics omitted.) (*People* v. *Superior Court (On Tai Ho)* *supra,* 11 Cal.3d at p. 66.) Thereupon the discretion of the executive—as that of any party to the proceeding—becomes subject to the supervision of the trial court. For example, although a court may not instruct an attorney which arguments he shall make and when, it may order him to cease a prejudicial, profane, insolent, unconstitutional or other improper argument which threatens the integrity of the trial.  ■    The court may enforce its orders through the contempt power (*Hallinan* v. *Superior Court* (1925) 74 Cal.App. 420, 426 [240 P. 788]; *DeGeorge* v. *Superior Court* (1974) 40 Cal.App.3d 305 [114 Cal.Rptr. 860]); and although rarely invoked against a public official, that power is available against district attorneys as well as other trial participants (*Gillen* v. *Municipal Court etc.* (1940) 37 Cal.App.2d 428 [99 P.2d 555]).  ■    Similarly, while judges do not have the power to direct the executive's choice of a representative for the People, the Constitution does not deny trial courts authority to disqualify a particular representative when his participation would taint the proceeding. The disqualification of a prosecutor in such a case does not impermissibly infringe on the executive's power to select a prosecutor any more than the general discretion of a prosecutor in presenting his case is inhibited when he is prevented from proceeding in an improper manner at trial.

## II. *Prosecutorial Bias Against Defendant as Ground for Disqualification.*

█ Having concluded that a trial judge has the authority in appropriate situations to recuse a prosecutor, we next consider whether this power is properly invoked on the basis of a determination that a district attorney's conflict of interest may bias him against a defendant.

█ A fair and impartial trial is a fundamental aspect of the right of accused persons not to be deprived of liberty without due process of law. (U.S. Const., 5th & 14th Amends.; Cal. Const., art. I, § 7, subd. (a); see, e.g., *Tumey* v. *Ohio* (1927) 273 U.S. 510 [71 L.Ed. 749, 47 S.Ct. 437, 50 A.L.R. 1243]; *In re Murchison* (1955) 349 U.S. 133, 136 [99 L.Ed. 942, 946, 75 S.Ct. 623]; *People* v. *Lyons* (1956) 47 Cal.2d 311, 319 [303 P.2d 329]; *In re Winchester* (1960) 53 Cal.2d 528, 531 [2 Cal.Rptr. 296, 348 P.2d 904].)

It is the obligation of the prosecutor, as well as of the court, to respect this mandate. (*Berger* v. *United States* (1935) 295 U.S. 78, 88 [79 L.Ed. 1314, 1321, 55 S.Ct. 629]; *People* v. *Lyons, supra,* 47 Cal.2d at p. 318; *People* v. *Talle* (1952) 111 Cal.App.2d 650, 676-678 [245 P.2d 633].) Nor is the role of the prosecutor in this regard simply a specialized version of the duty of any attorney not to overstep the bounds of permissible advocacy. The prosecutor is a public official vested with considerable discretionary power to decide what crimes are to be charged and how they are to be prosecuted. (*People* v. *Municipal Court (Pellegrino)* (1972) *supra,* 27 Cal.App.3d 193, 203-204; *Ganger* v. *Peyton* (4th Cir. 1967) *supra,* 379 F.2d 709, 713.) In all his activities, his duties are conditioned by the fact that he "is the representative not of any ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer." (*Berger* v. *United States* (1935) *supra,* 295 U.S. 78, 88 [79 L.Ed. 1314, 1321]; *People* v. *Lyons* (1956) *supra,* 47 Cal.2d at p. 318; see also *Ganger* v. *Peyton, supra,* 379 F.2d at p. 713; *United States* v. *Cox* (5th Cir. 1965) 342 F.2d 167, 193 (Wisdom, J., concurring).)

Thus not only is a judicial requirement of prosecutorial impartiality reconcilable with executive discretion in criminal cases, it is precisely because the prosecutor enjoys such broad discretion that the public he serves and those he accuses may justifiably demand that he perform his

functions with the highest degree of integrity and impartiality, and with the appearance thereof.[8] One of the reasons often cited for the institution of public prosecutions is that "Americans believed that an officer in a position of public trust could make decisions more impartially than could the victims of crimes or other private complainants," persons who often brought prosecutions under the older English system of criminal justice. (Miller, Prosecution (Am. Bar Foundation 1969) p. 295; see *Meister* v. *People* (1875) 31 Mich. 99, 103; 3 Holdsworth, A History of English Law (7th ed. 1956) p. 621, 9 Holdsworth, *id.,* pp. 241, 244-245.) This advantage of public prosecution is lost if those exercising the discretionary duties of the district attorney are subject to conflicting personal interests which might tend to compromise their impartiality. In short, the prosecuting attorney " 'is the representative of the public in whom is lodged a discretion which is not to be controlled by the courts, or *by an interested individual. . . .*' " (Italics added.) (*United States* v. *Cox, supra,* 342 F.2d at p. 192.)

Of course, the prosecutor's discretionary functions are not confined to the period before the filing of charges. As noted above, while the trial judge has the power to prevent actual prosecutorial misconduct in court, within those bounds the district attorney possesses the advocate's traditional ability to conduct his case in the manner he elects. (See, e.g., *People* v. *Pike* (1962) 58 Cal.2d 70, 86 [22 Cal.Rptr. 664, 372 P.2d 656] (voir dire examination); *People* v. *Traylor* (1972) 23 Cal.App.3d 323, 332 [100 Cal.Rptr. 116] (granting of immunity); *People* v. *Tuthill* (1947) 31 Cal.2d 92, 98 [187 P.2d 16] (use of particular witnesses or tests); *People* v. *Eggers* (1947) 30 Cal.2d 676, 693 [185 P.2d 1] (choice of argument); *People* v. *Silva* (1953) 41 Cal.2d 778, 782-783 [264 P.2d 27] (showing details of crime).) The prosecutor further retains the power to negotiate a plea bargain. (See *People* v. *Smith* (1975) 53 Cal.App.3d 655, 658 [126 Cal.Rptr. 195]; Pen. Code, § 1192.1 et seq.) A district attorney may thus prosecute vigorously, but both the accused and the public have a legitimate expectation that his zeal, as reflected in his tactics at trial, will be born of objective and impartial consideration of each individual case.

---

[8]The preservation of prosecutorial impartiality is perhaps most important during the charging process, the phase of a criminal proceeding when the prosecutor's discretion is most apparent. As the court in *Pellegrino* noted, "the theme which runs throughout the criminal procedure in this state is that all persons should be protected from having to defend against frivolous prosecutions, and that one major safeguard against such prosecutions is the function of the district attorney in screening criminal cases prior to instituting a prosecution." (Fn. omitted.) (27 Cal.App.3d at pp. 205-206.) Surely an essential aspect of this safeguard must be the prosecutor's freedom from any personal or emotional involvement in a controversy which might bias his objective exercise of judgment.

In *Ganger* v. *Peyton* (4th Cir. 1967) *supra,* 379 F.2d 709, a federal court was faced with a conviction obtained by a prosecutor who, at the time of trial, was also representing the defendant's wife in a divorce proceeding against the defendant. The court found that "Such a conflict of interest clearly denied [defendant] Ganger the possibility of a fair minded exercise of the prosecutor's discretion." (*Id.,* at p. 712.) Furthermore, the court rejected the state's claim that the conflict should not result in reversal unless specific misconduct or prejudice against the defendant could be shown, declaring (at p. 714), "the State contends that the improper conduct resulted in no harm to Ganger. We cannot so assume. It is true that although charged with a serious assault that could have resulted in imprisonment to the extent of twenty years, Ganger was convicted of a lesser assault and sentenced to only six months. But we do not know and cannot now ascertain what would have happened if the prosecuting attorney had been free to exercise the fair discretion which he owed to all persons charged with crime in his court." (Fn. omitted.) The court concluded that the prosecutor's conflict of interest amounted to reversible constitutional error, observing that "We think the conduct of this prosecuting attorney in attempting at once to serve two masters, the people of the Commonwealth and the wife of Ganger, violates the requirement of fundamental fairness assured by the Due Process Clause of the Fourteenth Amendment." (*Ibid.*)[9]

Although we do not hold as a matter of law that the participation of the district attorney in this case would necessarily constitute a denial of due process, certainly the due process implications of prosecutorial bias form a background for our consideration of the scope of the trial judge's power to recuse.

We have so far examined the problem of prosecutorial impartiality largely from the perspective of the accused. Society also has an interest in both the reality and the appearance of impartiality by its prosecuting officials: "It is essential that the public have absolute confidence in the integrity and impartiality of our system of criminal justice. This requires that public officials not only in fact properly discharge their responsibilities but also that such officials avoid, as much as is possible, the appearance of impropriety." (Fn. omitted.) (*People* v. *Rhodes* (1974) 12

[9]In *Ganger* the prosecutor's conflict was arguably more serious than that which appears on the record before us. There was evidence that the prosecuting attorney in *Ganger* attempted to use the criminal prosecution to gain an advantage in the civil divorce action, a suit in which there was "the possibility that the size of his fee would be determined by what could be exacted from the defendant." (*Id.,* at p. 713.) No comparable improper conduct on the part of the district attorney is suggested here.

Cal.3d 180, 185 [115 Cal.Rptr. 235, 524 P.2d 363].) Similar considerations led the American Bar Association to adopt, in its Standards Relating to the Prosecution Function, a provision that "A prosecutor should avoid the appearance or reality of a conflict of interest with respect to his official duties." (Approved Draft 1971, pt. 1, std. 1.2.)

■ For all the foregoing reasons we conclude that a trial judge may exercise his power to disqualify a district attorney from participating in the prosecution of a criminal charge when the judge determines that the attorney suffers from a conflict of interest which might prejudice him against the accused and thereby affect, or appear to affect, his ability to impartially perform the discretionary functions of his office.[10]

## III. *Abuse of Discretion*

The relative dearth of cases on the subject confirms that such conflicts rarely reach the trial courts. In this state it appears the issue is often resolved by intervention of the Attorney General acting under his statutory powers (fn. 3, *ante*), and nothing we say herein is intended to discourage that practice. In addition, district attorneys cannot be unduly sensitive in performing their prosecutorial duties. Of necessity they have substantial ties to the communities in which they serve, and might be expected in the natural course of events to become casually acquainted with persons who are subsequently the victims of criminal activity. These relationships seldom rise to the level of debilitating conflicts of interest.

■ Nevertheless, on the record before us we cannot conclude that the trial judge abused his discretion in disqualifying the district attorney.

[10]The majority of jurisdictions which have been confronted with similar situations appear to be in accord. (See *Ganger* v. *Peyton* (4th Cir. 1967) *supra,* 379 F.2d 709; *State* v. *Jensen* (1917) 178 Iowa 1098 [160 N.W. 832]; *State* v. *Cox* (1964) 246 La. 748 [167 So.2d 352]; *State* v. *Marcotte* (1956) 229 La. 539 [86 So.2d 186]; *State* v. *Tate* (1936) 185 La. 1006 [171 So. 108]; *Sinclair* v. *State* (1976) *supra,* 278 Md. 243 [363 A.2d 468]; *State* v. *Jones* (1924) 306 Mo. 437 [268 S.W. 83]; *People* v. *Krstovich* (1972) 72 Misc.2d 90 [338 N.Y.S.2d 132]; *Hall* v. *State* (1923) 24 Okla.Crim. 197 [217 P. 229]; *State* v. *Basham* (1969) *supra,* 84 S.D. 250 [170 N.W.2d 238]; but see *Brooks* v. *State* (1969) 45 Ala.App. 196 [228 So.2d 24]; *Benton* v. *State* (1944) 245 Ala. 625 [18 So.2d 428]; *State* v. *Williams* (Iowa 1974) 217 N.W.2d 573; *May* v. *Commonwealth* (Ky. 1955) 285 S.W.2d 160, 162 (participation "perhaps permissible," conviction reversed on other grounds); *Commonwealth* v. *Dunlap* (1975) 233 Pa.Super. 38 [335 A.2d 364] (participation of prosecutor improper but not grounds for reversal absent showing of prejudice); *State* v. *Goodwin* (1967) 250 S.C. 403 [158 S.E.2d 195] (prosecutor voluntarily withdrew); see also *People* v. *Farnsley* (1973) 53 Ill.2d 537 [293 N.E.2d 600] (minimal participation at trial by assistant counsel); *State* v. *Melerine* (1959) 236 La. 929 [109 So.2d 471] (insufficient conflict shown); *State* v. *Bussa* (1932) 176 La. 87 [145 So. 276] (same); *Garton* v. *State* (Mo. 1970) 454 S.W.2d 522 (same); *State* v. *McKissic* (Mo. 1962) 358 S.W.2d 1 (same); *State* v. *Rosengard* (1966) 47 N.J. 180 [219 A.2d 857] (same); Annot., 31 A.L.R.3d 953, 978-983.)

The victim of the homicide was the son of a member of the district attorney's staff who worked in the very office in which the prosecution was being prepared. It was within the bounds of the court's discretion to determine that the prosecutor might at least appear to have an emotional stake in the case of the sort which could disturb his exercise of impartial judgment in pretrial and trial proceedings. The circumstances surrounding the arrest of defendant Rose Anderson and the transfer of her child to the custody of Martha Anderson further support this ruling.[11]

Accordingly, we uphold that part of the trial court's order which disqualifies the District Attorney of Contra Costa County from participating in the prosecution of these charges.

IV. *The Orders Directed to the Attorney General*

Our decision that the trial judge did not abuse his discretion in recusing the district attorney diminishes the practical importance of ruling on the propriety of the two additional orders directing the Attorney General to "show cause" why he should not prosecute and directing him to "appear" at two future proceedings. Presumably the Attorney General, pursuant to his duties and powers under article V, section 13, of the California Constitution and section 12553 of the Government Code, will carefully consider whether he will now assume prosecution of the case.

Under Penal Code sections 995, 1385, and 1386, only the court may dismiss criminal charges once they have been filed. After disqualifying the district attorney, the court retained jurisdiction and the power to dismiss the charges in furtherance of justice. Whether the Attorney General intended to assume the prosecution was clearly relevant to the proper disposition of those charges. The court apparently sought to obtain this information by ordering the Attorney General to appear and to declare his position in the matter.

Interpreting the orders in this context, we conclude they were an appropriate incident to the court's power under sections 1385 and 995, as well as within the scope of section 128 of the Code of Civil Procedure. As

[11]Clearly the district attorney was not responsible for the creation of this potential conflict. Nor do we mean to impugn the motives or good faith of his office in seeking to conduct this prosecution. However, we are concerned with the potential for prosecutorial partiality and the appearance of a conflict of interest, both of which the trial court could have reasonably concluded existed in this case.

noted above, the latter statute applies to "all . . . persons in any manner connected with a judicial proceeding . . . in every matter appertaining thereto," language which is certainly broad enough to encompass the role of the Attorney General in this case. (Cf. *Ligda* v. *Superior Court* (1970) 5 Cal.App.3d 811, 826 [85 Cal.Rptr. 744].) The mere obligation to appear in court in response to a directive to do so would not itself infringe on any powers of the Attorney General. The court did not order the Attorney General to prosecute the case, and we express no opinion on the propriety of such an order if made. If the Attorney General declines to assume this prosecution, and the court is convinced that the charges should not be dismissed, it will be appropriate at that time to consider the court's options under the laws of this state. (See, e.g., Pen. Code, § 1130.)

The alternative writ is discharged and the peremptory writ is denied.

Tobriner, Acting C. J., Clark, J., Richardson, J., and Sullivan, J.,* concurred.

Petitioner's application for a rehearing was denied April 28, 1977, and the opinion was modified to read as printed above.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.