[Civ. No. 4219. Fifth Dist. Aug. 31, 1978.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SAN LUIS OBISPO COUNTY,
Respondent;
HOWARD GEORGE HOLLENBECK et al., Real Parties in Interest.

[Civ. No. 4236. Fifth Dist. Aug. 31, 1978.]

HORST GUNTER BAETJER et al., Petitioners, v.
THE SUPERIOR COURT OF SAN LUIS OBISPO COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

494

## Counsel

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, and Willard F. Jones, Deputy Attorney General, for Petitioner in No. 4219 and for Real Party in Interest in No. 4236 and Robert N. Tait, District Attorney, and Mark Weldon, Deputy District Attorney, for Petitioner in No. 4219.

Wendt, Mitchell, Sinsheimer, de la Motte & Lilley, Melvin A. de la Motte, Jr., Rosen, Rosen & Leavitt and Alan Dodd Rosen for Petitioners in No. 4236 and for Real Parties in Interest in No. 4219.

No appearance for Respondent.

## Opinion

**BROWN (G. A.), P. J.**—The San Luis Obispo County District Attorney's office and the California Attorney General's office commenced a criminal proceeding in the Superior Court of San Luis Obispo County (action No. 10599) against 16 defendants for conspiracy to commit the crime of transporting and importing marijuana (Pen. Code, § 182, subd. 1) and for the crimes of unlawful transportation and importation of marijuana (Health & Saf. Code, § 11360, subd. (a)) and unlawful possession of marijuana for sale (Health & Saf. Code, § 11359). Upon motion of defendants, the district attorney's office was recused from the proceeding on the ground that three present members and one former member of that office could be called upon to supply direct testimony on issues raised in various pretrial motions or to rebut the testimony of others presented at the hearings on those motions. Defendants' motion to recuse the Attorney General's office from the proceeding was denied.

In 5 Civil 4219 the San Luis Obispo County District Attorney and the California Attorney General, in the name of the People of the State of California, have petitioned this court for writs of prohibition and mandate to restrain the superior court from enforcing, and to command the court to annul, its order recusing the district attorney's office. In 5 Civil 4236, two of the defendants involved in the criminal prosecution in question, Horst Gunter Baetjer and Kenneth Martin Tarlow, have petitioned this court for a writ of mandate to compel the superior court to grant the motion to recuse the Attorney General's office; alternatively, if this relief and the relief in 5 Civil 4219 are not granted, defendants Baetjer and Tarlow request this court to compel the superior court to enter an order directing the Attorney General's office to isolate itself from the San Luis Obispo County District Attorney's office with respect to staff, place of work, and association and participation in the prosecution of the case against defendants. We conclude that the superior court acted improperly in recusing the district attorney's office; we further are of the opinion that the court acted within its discretion in denying the motion to recuse the Attorney General's office.

## THE FACTS

In the early part of June 1976, Gabriel Castorena, a police informant, told the San Luis Obispo County Sheriff's Department that sometime before the end of that year a major drug smuggling operation working out of the Los Angeles area was going to smuggle into the United States by boat a large quantity of drugs, and that the smugglers were going to unload the contraband at a cove in the San Simeon area of San Luis Obispo County. Castorena provided the sheriff's department with the names of the smugglers; subsequent police investigation, plus discussions with the Los Angeles City Police Department, corroborated Castorena's information. A joint operation involving members of the San Luis Obispo County Sheriff's Department, the Los Angeles City Police Department, the United States Drug Enforcement Agency, and the United States Customs Service was commenced to catch the smugglers during the course of their criminal conduct.

On October 27, 1976, Ronald Carmona, allegedly one of the main organizers of the smuggling operation, arrived at Castorena's residence in the Cambria area of San Luis Obispo County to stay with Castorena for several days. Carmona was kept under police surveillance; apparently without Castorena's consent, an electronic listening device was installed in his residence in order to overhear Carmona's conversations.

On the evening of October 29, 1976, the police located several other of the alleged smugglers staying at the Sands Motel in San Simeon Acres. Detective Peter Osteyee of the San Luis Obispo County Sheriff's Department and Officer James Gillespie of the Los Angeles City Police Department positioned themselves in a motel room next to one of the rooms being occupied by some of the smugglers. During the next couple of days of surveillance, Detective Osteyee and Officer Gillespie used electronic amplifying equipment in order to overhear the conversations in the room next door.

At about 8:15 p.m. on October 31, 1976, police officers, from a secret hiding place, visually observed an 80-foot fishing boat come into a secluded cove on the Hearst Ranch property just north of San Simeon Harbor. For the next hour and 45 minutes, the police saw numerous boxes, each of which was approximately 3 feet × 3 feet × 3 feet, unloaded from the fishing boat onto a 20-foot skiff and then taken to shore. At 9:35 p.m., the fishing boat left the area. Approximately 40 minutes later, at 10:15 p.m., a Hertz rental truck appeared in the area; it stopped next to the boxes that had been brought to shore, and the boxes were loaded into the truck. At 10:45 p.m. the Hertz truck left the area and 45 minutes later it was stopped while proceeding southbound on Highway 1. In the back of the truck the police found 147 wooden boxes containing approximately 6,000 pounds of Thai-sticks (a high grade of marijuana from the female tops of the plant that is wrapped around a bamboo shoot and secured to the shoot by a small piece of thread, and which, on the street, sells anywhere from $20 to $35 a stick); the purported street value of the cache of contraband was between $45 million to $50 million.

On November 3, 1976, a criminal complaint was filed in the municipal court charging those arrested for the smuggling operation with violations of the Health and Safety Code and with criminal conspiracy; San Luis Obispo County Deputy District Attorney R. Wyatt Cash was assigned to handle the case at the preliminary examination. In order for the district attorney's office to have sufficient time to prepare for the preliminary examination, it was agreed between that office and defendants that the prosecution could obtain a continuance in exchange for a promise that the case would proceed by way of preliminary examination rather than grand jury indictment; with that understanding in mind, the prosecution obtained an appropriate continuance until the middle of February 1977.

Between early November 1976 and the scheduled date of the preliminary examination, several interesting events occurred. Initially, the district

attorney's office learned that electronic surveillance was conducted at the Sands Motel without prior court approval. Detective Peter Osteyee claimed that after he and Officer Gillespie checked into the motel, but before they obtained the electronic surveillance equipment, he talked to a deputy district attorney in the San Luis Obispo County District Attorney's office, possibly Deputy District Attorney Robert King, and that the deputy district attorney, after looking into the matter and calling back, said that the use of the electronic surveillance equipment was all right, provided that the case against the suspects was not completely dependent upon what was overheard with the equipment.

Deputy District Attorney Robert King admitted receiving a telephone call from a sheriff's officer making an inquiry about the use of electronic surveillance equipment. At one time, Deputy District Attorney King was of the opinion that it "made the most sense" that the telephone call was received by him prior to the use of the equipment. However, after giving the matter further thought, Deputy District Attorney King concluded that the telephone call asking about the use of the electronic surveillance equipment came to him sometime during the first week of November 1976 after defendants were arrested.

Additionally, Detective Osteyee, while conducting the electronic surveillance, made a tape recording of some of the conversations he and Officer Gillespie overheard from the room next door. Furthermore, Detective Osteyee and Officer Gillespie took two or three slides of each other, using the electronic surveillance equipment. Sometime before December 26, 1976, Detective Osteyee apparently erased the tape recording of the conversations he had recorded; sometime after December 26, 1976, but before the scheduled date of the preliminary examination in the middle of February 1977, Detective Osteyee destroyed the slides of him and Officer Gillespie using the electronic surveillance equipment. On December 26, 1976, 50 pounds of the Thai-sticks seized on the evening of October 31 were stolen from the evidence locker at the San Luis Obispo County Sheriff's Department.

Although his story is confusing and equivocal, Detective Osteyee's relation of the events is susceptible to the interpretation that he told Deputy District Attorney Cash, the individual assigned to handle the preliminary examination, of the existence of the tape recording and the slides before they were destroyed. However, Deputy District Attorney Cash denies ever knowing of the existence of the tape recording and the slides until after they were destroyed. Also, shortly before the preliminary

examination, Deputy District Attorney Cash learned for the first time that electronic surveillance equipment had been used at the residence of informant Gabriel Castorena.

On February 14, 1977, the magistrate commenced to hear several defense motions before the beginning of the preliminary examination; during the course of those motions, the defense for the first time learned of the use of electronic surveillance equipment at the Sands Motel and Castorena's residence. On February 17, 1977, the magistrate dismissed the complaint against defendants primarily upon the grounds that the prosecution had failed to comply with certain discovery orders.

On February 24, 1977, one of the defense lawyers wrote the Governor of California and the United States Attorney General in Los Angeles informing them of the possible criminal conduct by the police in using electronic surveillance equipment against defendants; the lawyer asked for a complete investigation of the matter. Four days later the San Luis Obispo County District Attorney's office decided temporarily to forego any further prosecution of defendants since the police officers involved in the case were no longer willing to testify. On the same day, the California Governor's office referred the matter of investigating the police officers to the California Attorney General's office.

On March 7, 1977, San Luis Obispo County District Attorney Robert Tait, Assistant District Attorney Christopher Money and Deputy District Attorney R. Wyatt Cash met in Sacramento with Chief Assistant Attorney General Jack Winkler. At that time it was agreed that the Attorney General's office would investigate the alleged wrongdoing by the police officers. A week later, Deputy Attorney General Willard Jones was assigned to head the investigation.

In April 1977, Deputy Attorney General Jones went to the Sands Motel and "sound-tested" the rooms involved in order to ascertain if the smugglers could have had a reasonable expectation that their conversations would not be heard by people next door. During his investigation of the matter, Deputy Attorney General Jones, on several occasions, talked to members of the United States Attorney General's office in Los Angeles; it was explained to Jones that that office was not going to conduct its investigation of the matter until the California Attorney General's office had completed its investigation.

By June 21, 1977, Deputy Attorney General Jones had concluded that the electronic surveillance at the Sands Motel and at Castorena's residence did not violate the provisions of chapter 1.5 of title 15 of part 1 of the California Penal Code (§ 630 et seq.) which impose criminal penalties for the unlawful use of electronic surveillance equipment. However, on June 27, 1977, Deputy Attorney General Jones concluded that in conducting their electronic surveillance the police officers may have violated the provisions of the federal law proscribing the unlawful use of electronic surveillance equipment (18 U.S.C. § 2510 et seq.).

On July 21, 1977, Chief Assistant Attorney General Winkler and Deputy Attorney General Jones met in Sacramento with District Attorney Tait, Assistant District Attorney Money and Deputy District Attorney Cash. Deputy Attorney General Jones explained that the police may have violated federal laws; it was agreed that the United States Attorney General's office in Los Angeles would be contacted by the California Attorney General's office and told of the conclusions reached. At the same meeting, the San Luis Obispo County District Attorney's office requested "manpower" in order to follow the federal investigation and to reopen the case against defendants if at all possible. Deputy Attorney General Jones was assigned to perform these functions. For the next six months, Deputy Attorney General Jones was in regular contact with federal authorities for the purpose of ascertaining the status of the federal investigation. On January 20, 1978, the federal grand jury in Los Angeles declined to indict the police officers for any violation of federal law.

On March 27, 28 and 29, 1978, Deputy Attorney General Jones and San Luis Obispo County Deputy District Attorney Mark Weldon appeared before the San Luis Obispo County Grand Jury, presented evidence and obtained an indictment against defendants for conspiracy to commit the crime of transporting and importing marijuana, and for the crimes of unlawful transportation and importation of marijuana and unlawful possession of marijuana for sale. The indictment was immediately presented to and filed with the San Luis Obispo County Superior Court.

Since the return of the indictment, defendants have filed approximately 16 pretrial motions including motions to set aside the indictment (Pen. Code, § 995), to suppress evidence on the grounds of unlawful search and seizure (Pen. Code, § 1538.5), to impose sanctions for the loss and destruction of evidence (*People* v. *Hitch* (1974) 12 Cal.3d 641 [117

Cal.Rptr. 9, 527 P.2d 361]), to dismiss the indictment for preindictment delay and to dismiss the indictment for "breach of contract."

### 5 CIVIL 4219

The superior court recused the entire San Luis Obispo County District Attorney's office from prosecuting the case against defendants solely upon the ground that either the prosecution or defense, or both, may call as witnesses at the various pretrial hearings three present members of the district attorney's office (Assistant District Attorney Christopher Money and Deputy District Attorneys Daniel Hilford and R. Wyatt Cash) and one former member of the office (Robert King) for the purposes of supplying direct testimony on the issues raised at the pretrial hearings or rebutting the testimony of other witnesses at the pretrial hearings. The court specifically found that it was too premature to determine whether the four individuals in question might be called as witnesses at the trial on defendants' guilt or innocence; nor have any of the defense counsel been able to point out a single issue on which one or more of those four individuals ought to testify at the trial on the matter of defendants' guilt or innocence.

■ It is settled that in this state a trial court has the judicial power to recuse an entire district attorney's office from prosecuting a case. (See *People* v. *Superior Court (Greer)* (1977) 19 Cal.3d 255, 261-265 [137 Cal.Rptr. 476, 561 P.2d 1164]; *Younger* v. *Superior Court* (1978) 77 Cal.App.3d 892, 896-897 [144 Cal.Rptr. 34].) In appropriate circumstances, this power includes the authority to recuse an entire office merely because one of its attorneys ought to be a witness at trial. (See *Comden* v. *Superior Court* (1978) 20 Cal.3d 906, 912-916 [145 Cal.Rptr. 9, 576 P.2d 971]; cf. ABA Code of Prof. Responsibility, DR 5-101 (B), 5-102 (A), 5-105 (D); Cal. Rules Prof. Conduct, rule 2-111(A)(4).)
■ However, assuming that Assistant District Attorney Money, Deputy District Attorneys Hilford and Wyatt, and former Deputy District Attorney King ought to testify at some of the *pretrial hearings,* we nevertheless conclude that the superior court abused its discretion in recusing the district attorney's office.

The superior court recused the entire district attorney's office without being sure whether the four potential witnesses in question were going to be called by the prosecution or by the defense; the court specifically found that the potential witnesses ". . . may be called as witnesses for either or both sides . . . ." The general rule is that a district attorney's

office should not be recused from a case merely because one or more of its attorneys will be called as witnesses for the defense. (See *Chessman* v. *Teets* (9th Cir. 1956) 239 F.2d 205, 214, vacated on other grounds (1957) 354 U.S. 156 [1 L.Ed.2d 1253, 77 S.Ct. 1127]; *United States* v. *Maloney* (W.D.Pa. 1965) 241 F.Supp. 49, 51; *State* v. *Howard* (1976) 27 Ariz.App. 339 [554 P.2d 1282, 1285]; *State* v. *King* (Iowa 1977) 256 N.W.2d 1, 15; *State* v. *Bennett* (La. 1976) 341 So.2d 847, 858; Annot., Prosecuting Attorney as a Witness in Criminal Case (1973) 54 A.L.R.3d 100, 162.) A possible exception to this rule can occur where the testimony of the attorney called by the defense will be prejudicial to the prosecution's case (see ABA Code of Prof. Responsibility, DR 5-102 (B); Cal. Rules Prof. Conduct, rule 2-111(A)(5)); but in the instant case, there is no evidence to indicate that the testimony of the four potential witnesses in question will be adverse to the prosecution's case. Accordingly, before recusing the entire district attorney's office, the superior court should have been more certain that the present members of that office, and the one former member, ought to be called as witnesses on behalf of the prosecution; also, the court should have pointed out the precise issue upon which the potential witnesses would offer testimony because, on the record before us, we perceive none.

In any event, the real abuse of discretion occurred when the superior court recused the entire district attorney's office merely because three of its present members, and one of its former members, might testify at "pretrial" hearings. The cases criticizing a prosecuting attorney for testifying on behalf of the prosecution without withdrawing from the proceedings involve situations where the prosecuting attorney testified before a jury determining the guilt or innocence of the accused. (See, e.g., *People* v. *Guerrero* (1975) 47 Cal.App.3d 441 [120 Cal.Rptr. 732]; see also Annot., Prosecuting Attorney as a Witness in Criminal Case (1973) 54 A.L.R.3d 100, 118, § 5[a] and cases cited.) In large part, the reluctance of courts to allow such testimony in the absence of the prosecuting attorney's withdrawing from the case is the danger that a jury would believe the prosecuting attorney to be more credible than an ordinary witness. (*Robinson* v. *United States* (8th Cir. 1929) 32 F.2d 505, 510; *Shargaa* v. *State* (Fla. 1958) 102 So.2d 809, 813; *People* v. *Thomas* (1976) 38 Ill.App.3d 685 [348 N.E.2d 282, 284]; *People* v. *Cannon* (1975) 25 Ill.App.3d 737 [323 N.E.2d 846, 851-852]; *Frank* v. *State* (1949) 150 Neb. 745 [35 N.W.2d 816, 821]; see ABA Code of Prof. Responsibility, EC 5-9.)

However, where the prosecuting attorney will only be testifying at pretrial hearings where the trier of fact is a judge, not a jury, this danger

does not exist. (*People* v. *Cannon, supra,* 323 N.E.2d 846, 852; cf. *People* v. *Battin* (1978) 77 Cal.App.3d 635, 671-672 [143 Cal.Rptr. 731].) A judge, without a jury, is presumably competent ". . . to filter out and put in true perspective whatever impropriety, real or imagined, might otherwise exist." (*Comden* v. *Superior Court, supra,* 20 Cal.3d 906, 919, (dis. opn. of Manuel, J.).) This is especially true, where, as here, the attorney actually prosecuting the case is not one of the attorneys who ought to be called as a witness.

Additionally, we observe that both the American Bar Association Code of Professional Responsibility Disciplinary Rules and the California Code of Professional Conduct merely state that when an attorney must withdraw from employment because either the attorney or a member of the attorney's firm ought to be called as a witness on behalf of the attorney's client, the attorney shall withdraw from the conduct of the "trial" and the firm, if any, shall not continue representation in the "trial." (ABA Code of Prof. Responsibility, DR 5-102 (A); Cal. Rules Prof. Conduct, rule 2-111(A)(4) as noted in *Comden* v. *Superior Court, supra,* 20 Cal.3d 906, 911, fn. 1.)

While arguably, even in pretrial hearings where a judge tries the issues, there is always the possibility that testimony by an attorney or a member of the attorney's firm may lead the public to be skeptical of lawyers as witnesses, thereby diminishing the public's respect and confidence towards the profession (see *U.S.* ex rel. *Sheldon El. Co.* v. *Blackhawk Htg. & Plmg.* (S.D.N.Y. 1976) 423 F.Supp. 486, 489-490; *Comden* v. *Superior Court, supra,* 20 Cal.3d 906, 912), under the facts of the instant case, this possibility is not enough to justify the recusal of the entire district attorney's office. Whether the pretrial hearings are handled by the San Luis Obispo County District Attorney's office, the California Attorney General's office or a special prosecutor, if the witnesses in question are called, the public still will know that they are present or former members of an office whose function is to prosecute those charged with crime. The stigma of being part of the prosecutorial team will not in any way be alleviated by the futile gesture of assigning someone else to handle the pretrial motions; the public still will have the same amount of skepticism. The situation is dissimilar to that in the civil arena where, after a firm withdraws from a case because one of its attorneys ought to be called as a witness on behalf of its client, the firm severs its relationships with its client.

The petition filed by the People in this court, and all of the documents and transcripts lodged therewith, fully present the determinative issues. The superior court commendably permitted the parties to argue the motion at length, and we have before us a transcript of that argument. An alternative writ or order to show cause would add nothing to the full presentation already made. (*Cuevas* v. *Superior Court* (1976) 58 Cal.App.3d 406, 411-412 [130 Cal.Rptr. 238]; see *McComb* v. *Superior Court* (1977) 68 Cal.App.3d 89, 93 [137 Cal.Rptr. 233].) A peremptory writ of mandate is proper and should issue. (Code Civ. Proc., § 1088; see *McGown* v. *Superior Court* (1977) 75 Cal.App.3d 648, 654 [142 Cal.Rptr. 262].) Of course, defendants will be entitled to renew their motion to recuse the district attorney's office if there is any change of circumstances justifying such a motion.

### 5 CIVIL 4236

■ Having concluded that the order recusing the entire San Luis Obispo County District Attorney's office was improper, the only remaining issue before us in 5 Civil 4236 is whether the superior court abused its discretion in denying defendants' motion to recuse the entire California Attorney General's office. We have concluded that the court acted within its discretion.

Defendants sought to recuse the Attorney General's office since that office was in charge of the state criminal investigation of the law enforcement officers who used the electronic surveillance equipment against defendants. In essence defendants argue that the duties of the Attorney General's office in criminally investigating the officers is in conflict with its actions in joining the prosecution against defendants where the testimony of the officers who were criminally investigated is material evidence adverse to defendants and arises out of some of the very same incidents for which the officers were investigated. Because of this purported conflict of interest, defendants maintain that the Attorney General's office should be recused from the case.

■ It cannot be disputed that a prosecuting attorney should be recused for a conflict of interest that might be prejudicial to the accused. (*People* v. *Superior Court (Greer), supra,* 19 Cal.3d 255, 269.) Such a conflict of interest arises when the prosecuting attorney, or a former firm or partner of the prosecuting attorney, previously represented or was consulted professionally by the accused with respect to the offense charged or in relation to matters so closely interwoven therewith as to be

in effect a part thereof. (Annot., Disqualification of Prosecuting Attorney on Account of Relationship with Accused (1970) 31 A.L.R.3d 953, 957; see also *Younger* v. *Superior Court, supra,* 77 Cal.App.3d 892, 896-897.) Another area of conflict occurs where the prosecuting attorney and the defendant are embroiled in civil litigation (*People* v. *Superior Court (Greer), supra,* 19 Cal.3d 255, 261) or the prosecuting attorney otherwise has developed a bias or hostility against the defendant or has a personal interest in convicting the defendant (see 63 Am.Jur.2d (1972) Prosecuting Attorneys, § 29, p. 357). In short, a recusable conflict of interest generally arises where some matter extraneous to the prosecuting attorney's normal duties causes the conflict of interest. (See *People* v. *Municipal Court (Byars)* (1978) 77 Cal.App.3d 294, 299 [143 Cal.Rptr. 491].)

 In the instant case, the Attorney General's office was performing two functions it lawfully was empowered to do: first, it conducted a criminal investigation of the officers who used the electronic surveillance equipment; second, it joined forces with the San Luis Obispo County District Attorney's office to prosecute defendants. (Cal. Const., art. V, § 13; Gov. Code, § 12550.) Nevertheless, there may be circumstances where the function of the Attorney General's office in prosecuting a certain defendant may be in such conflict with another lawful function of that office that a recusal of the Attorney General's office from the criminal prosecution is necessary. This may occur where the Attorney General's office engages in a function that is in fact adverse to a particular function in which it previously was engaged. (Cf. Annot., Propriety and Effect of Attorney Representing Interest Adverse to that of Former Client (1957) 52 A.L.R.2d 1243, 1247.) Contrary to defendants' contention, this is not such a case.

The Attorney General's office completed its criminal investigation of the police officers before it provided "manpower" to the San Luis Obispo County District Attorney's office to assist in the prosecution of defendants. Although the investigation of the officers related to certain events surrounding defendants' prosecution, there is nothing in the record to suggest that in conducting the criminal investigation of the officers the Attorney General's office obtained any information that it would not otherwise have discovered. Furthermore, there is nothing in the record to suggest that the Attorney General's office did not adequately and fully investigate the police officers before deciding not to prosecute them. Nor is there anything in the record to indicate that the Attorney General's office is using the prosecution against defendants in order to justify its conclusions that the officers did not violate any state law. We find no

abuse of discretion in the superior court's denial of defendants' motion to recuse the entire Attorney General's office. Whether or not there is a sound basis for recusing only Deputy Attorney General Willard Jones from the prosecution is not at issue before this court.

### DISPOSITION

In 5 Civil 4219, let a peremptory writ of mandate issue directing respondent superior court to set aside that part of its order of July 5, 1978, recusing the San Luis Obispo County District Attorney's office from participating in San Luis Obispo County Superior Court action No. 10599, and to enter an order denying defendants' motion to recuse the district attorney's office without prejudice to renew the motion if a change of circumstances so justifies; the petition for writ of prohibition in 5 Civil 4219 is denied.

In 5 Civil 4236, the petition for writ of mandate is denied.

Franson, J., and Andreen, J.,* concurred.

The applications of petitioner and real party in interest Baetjer for a hearing by the Supreme Court were denied November 9, 1978.

*Assigned by the Chairperson of the Judicial Council.