Filed 4/8/20 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CHRISTYNNE LILI WRENE WOOD, | D076325 |
| Petitioner, | |
| v. | (San Diego County Super. Ct. No. 37-2018-00019066-CU-CR-CTL) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | ORDER MODIFYING OPINION |
| CFG JAMACHA, LLC, et al., | NO CHANGE IN JUDGMENT |
| Real Parties in Interest. | |

THE COURT:

It is ordered that the opinion filed herein on March 13, 2020, be modified as follows:

On pages 5 and 6, in fifth sentence of the paragraph beginning, "After the parties were unable," the phrase "Crunch's public statements" is replaced with "DFEH's public statements," so that the modified paragraph reads as follows:

> After the parties were unable to resolve their dispute informally, Crunch filed a motion to compel production of documents, including

the email at issue. Crunch contended that the documents were relevant, discoverable, and nonprivileged. Crunch disputed that an attorney-client relationship could exist between the DFEH and Wood, given DFEH's governmental function. Among other things, Crunch cited DFEH's letters to Crunch during its investigation of Wood's complaint, where it stated that " 'DFEH serves as a neutral fact-finder and represents the state of California rather than the complaining party.' " Crunch asserted these letters were consistent with DFEH's public statements, which state, " 'The DFEH will conduct an impartial investigation. [DFEH] is not an advocate for either the person complaining or the person complained against. [DFEH] represents the state.' " Crunch argued that DFEH may act only on behalf of the state and, similar to a criminal prosecutor, it could not compromise its impartiality by undertaking to represent a specific individual. Crunch concluded that Wood could not show that her communications with DFEH were for the purpose of securing legal advice or retaining DFEH lawyers as her counsel.

There is no change in the judgment.

HUFFMAN, Acting P. J.

Copies to: All parties

2

Filed 3/13/20 (unmodified version)

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CHRISTYNNE LILI WRENE WOOD, Petitioner, v. THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent; CFG JAMACHA, LLC, et al., Real Parties in Interest. | D076325 (San Diego County Super. Ct. No. 37-2018-00019066-CU-CR-CTL) |

ORIGINAL PROCEEDINGS in mandate. Joel R. Wohlfeil, Judge. Petition denied.

ACLU Foundation of San Diego & Imperial Counties, David Loy, Melissa DeLeon; Nixon Peabody, Michael Lindsay, Seth D. Levy, Erin Holyoke; ACLU Foundation of Southern California, Amanda Goad and Aditi Fruitwala, for Petitioner.

No appearance for Respondent.

Liedle, Larson & Vail, Tamara G. Vail and Ryan G. Rupe, for Real Parties in Interest CFG Jamacha, LLC and John Romeo.

Xavier Becerra, Attorney General, Michael L. Newman, Assistant Attorney General, Cherokee DM Melton and Anthony V. Seferian, Deputy Attorneys General, for Real Party in Interest California Department of Fair Employment and Housing.

Petitioner Christynne Lili Wrene Wood contacted the California Department of Fair Employment and Housing (DFEH) to report alleged gender discrimination by her Crunch fitness club, which is owned and operated by CFG Jamacha, LLC and John Romeo (collectively, Crunch). After an investigation, DFEH filed a lawsuit against Crunch alleging violations of the Unruh Civil Rights Act (Civ. Code, § 51) for unlawful discrimination on the basis of gender identity or expression. Wood intervened as a plaintiff in the lawsuit. During discovery, Crunch requested that Wood produce all communications with DFEH relating to Crunch. As relevant here, Wood refused to produce one such communication, a prelitigation email she sent to DFEH lawyers regarding her DFEH complaint, on the grounds of attorney-client privilege. Crunch moved to compel production of the email, and the trial court granted the motion.

Wood filed a petition for writ of mandate in this court. She argued that the trial court erred by overruling her objection based on the attorney-client privilege and compelling production of the email. We summarily denied the petition. The California Supreme Court granted review and transferred the matter back to this court with directions "to vacate [our] order denying mandate and to issue an order directing the

2

superior court to show cause why the relief sought in the petition should not be granted." We issued the order to show cause as directed, and these proceedings followed.

We conclude that Wood has not shown the attorney-client privilege applies to the email at issue. A prima facie showing of privilege requires that the communication be made in the course of an attorney-client relationship. (See Evid. Code, § 952; *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733 (*Costco*).) DFEH lawyers have an attorney-client relationship with the State of California. Wood has not shown DFEH lawyers formed an attorney-client relationship with her. As such, any communications between Wood and DFEH lawyers were not made in the course of an attorney-client relationship and were not privileged. We therefore deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

According to DFEH's operative complaint, Wood is a member of a Crunch fitness club in El Cajon, California. She is a transgender woman. In 2016, she began physically transitioning from male to female. After she was harassed by another member in the Crunch men's locker room, Wood provided Crunch with medical verification of her transition and requested use of the women's locker room. Crunch declined Wood's request but told her she would be allowed to use Crunch's more exclusive "platinum" men's locker room. Wood reluctantly agreed and continued patronizing the gym. The next year, Wood legally changed her name and gender marker to female. She repeated her request to Crunch that she be allowed to use the women's locker room. Crunch again declined. It told Wood that she would need to complete " 'sex-reassignment surgery' " in order to use the women's locker room. However, after Wood was again harassed by

3

another member, this time in the platinum men's locker room, Crunch consented to Wood's use of the women's locker room.

Based on these allegations, DFEH alleged a cause of action against Crunch for unlawful discrimination based on gender identity and expression.  (Civ. Code, § 51, subds. (b), (e)(5).)  On behalf of Wood, DFEH sought statutory damages of $4,000 for each time Wood was denied access to the women's locker room.  (*Id*., § 52, subd. (a).)  In the alternative, DFEH sought actual damages for Wood's out-of-pocket expenses and emotional distress.

DFEH also sought injunctive relief, including that Crunch (1) cease and desist discrimination against Wood and all other current and prospective members based on gender identity, gender expression, or any other protected characteristic; (2) provide Wood and all other current and prospective members access to the locker room and restroom facilities that accord with their gender identity; (3) not retaliate against Wood for her complaint of discrimination; (4) post a copy of the court's judgment in an area visible to all current and prospective members; (5) provide recurring antidiscrimination training of at least two hours to all owners, managers, and employees at Crunch, with special emphasis on sex and gender discrimination; (6) post a copy of DFEH's "Unruh Civil Rights Act Fact Sheet" in an area visible to all current and prospective members; (7) modify all Crunch nondiscrimination policies to comply with applicable California and federal law, including an explicit statement that current and prospective members shall have access to locker room and restroom facilities that accord with their gender identity; (8) develop, implement, and distribute a written policy and procedures for

4

handling and documenting member complaints and Crunch's responses; and (9) provide DFEH with recurring reports certifying Crunch's compliance. DFEH demanded its reasonable attorney fees and costs.

Wood, represented by her own counsel, filed a complaint in intervention. (Gov. Code, § 12965, subd. (a).) Based on a similar set of factual allegations, Wood alleged causes of action against Crunch for unlawful discrimination, negligence, and negligent hiring and supervision. In addition to the relief requested by DFEH, Wood requested punitive damages and her own reasonable attorney fees and costs.

As noted, during discovery, Crunch requested that Wood produce all communications with DFEH relating to Crunch. Wood objected to the request based on, among other grounds, the attorney-client privilege. Wood eventually produced certain documents and withheld others, including the email at issue in this proceeding. In a privilege log, Wood described the email as an "Email from Christynne Wood to Nelson Chan and Jeanette Hawn regarding Ms. Wood's DFEH complaint." She asserted objections based on the attorney-client privilege, the official information privilege, and the deliberative process privilege. The email was sent in June 2017, during DFEH's investigation, after Wood had filed an administrative complaint with DFEH, but before DFEH filed suit against Crunch. Chan and Hawn are DFEH lawyers.

After the parties were unable to resolve their dispute informally, Crunch filed a motion to compel production of documents, including the email at issue. Crunch contended that the documents were relevant, discoverable, and nonprivileged. Crunch disputed that an attorney-client relationship could exist between the DFEH and Wood,

5

given DFEH's governmental function. Among other things, Crunch cited DFEH's letters to Crunch during its investigation of Wood's complaint, where it stated that " 'DFEH serves as a neutral fact-finder and represents the state of California rather than the complaining party.' " Crunch asserted these letters were consistent with Crunch's public statements, which state, " 'The DFEH will conduct an impartial investigation. [DFEH] is not an advocate for either the person complaining or the person complained against. [DFEH] represents the state.' " Crunch argued that DFEH may act only on behalf of the state and, similar to a criminal prosecutor, it could not compromise its impartiality by undertaking to represent a specific individual. Crunch concluded that Wood could not show that her communications with DFEH were for the purpose of securing legal advice or retaining DFEH lawyers as her counsel.

Crunch further contended that the deliberative process and official information privileges did not apply. The deliberative process privilege was inapplicable in litigation unrelated to a review of agency action. The official information privilege was only a qualified privilege, and the necessity for preserving the confidentiality of the communication did not outweigh the necessity for disclosure in the interest of justice.

Wood opposed the motion. She claimed the attorney-client privilege applied because "at all relevant times, the DFEH was acting in a legal capacity and Ms. Wood believed the DFEH represented her." In a declaration submitted with her opposition, Wood stated, "Throughout communications with the DFEH, I thought the DFEH was helping me with a legal dispute and believed that all conversations I had with DFEH lawyers were confidential. During the times I spoke with DFEH lawyers and DFEH

6

employees, I thought that lawyers had to maintain the confidences of people they were speaking to."  In addition, in a deposition, Wood asserted that a DFEH lawyer represented her, along with her retained counsel.

Wood relied on federal cases finding an attorney-client privilege between the U.S. Equal Employment Opportunity Commission (EEOC) and complaining parties who claimed to seek legal advice from the EEOC.  She distinguished the situation of criminal prosecutors because "prosecutors do not file cases on behalf of real parties in interest[] and do not seek victim-specific relief."

Wood also contended that the official information privilege protected the email at issue.  (See Evid. Code, § 1040.)  She acknowledged the privilege was not absolute, but she claimed that the need for confidentiality outweighed the need for disclosure in litigation.  She argued, "It is in the public interest to allow claimants like Ms. Wood to file claims with the DFEH confidentially in order to encourage the reporting of discrimination and facilitate an open and truthful investigative process."

In a tentative ruling, the court expressed skepticism that the attorney-client privilege applied, though it appeared unaware that Wood was communicating directly with DFEH lawyers.  Regarding the official information privilege, the court weighed the need for disclosure against the need for confidentiality and concluded that the documents should be produced.

At the hearing on Crunch's motion to compel, DFEH's counsel clarified that the email at issue (as well as another withheld email) were communications directly between Wood and DFEH lawyers.  She argued, "[T]here is, in fact, attorney-client privilege

7

between DFEH lawyers and aggrieved individuals in general." Both DFEH counsel and Wood's counsel emphasized the federal cases finding that communications with the EEOC may be privileged. Following this argument, the court was still unpersuaded that the attorney-client privilege applied. But, apparently to assess the official information privilege, the court accepted in camera review of the emails.

In a subsequent minute order, the court wrote that, "in evaluating the privileges asserted by DFEH and Wood, [it] has strived to balance [Crunch's] need to obtain the materials to defend DFEH and Wood's allegations with Wood's interest to preserve her privacy, to the extent she hasn't waived her right to do so by virtue of her allegations." As to the email at issue here, the court overruled Wood's objections and ordered the email produced. (As to the other email, the court sustained Wood's objections without further explanation.)

Wood filed a petition for writ of mandate challenging the court's order compelling production of the email. After we summarily denied the petition, and the Supreme Court granted review and transferred the matter back to this court, we issued an order to show

cause why the relief sought in Wood's petition should not be granted. Crunch and DFEH have participated in these proceedings as real parties in interest.[1]

DISCUSSION

I

*Nature and Scope of the Attorney-Client Privilege*

"The attorney-client privilege, set forth at Evidence Code section 954, confers a privilege on the client 'to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . .' The privilege 'has been a hallmark of Anglo-American jurisprudence for almost 400 years.' [Citation.] Its fundamental purpose 'is to safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding individual legal matters. [Citation.] . . . [¶] Although exercise of the privilege may occasionally result in the suppression of relevant evidence, the Legislature of this state has determined that these concerns are outweighed by the importance of preserving confidentiality in the attorney-client relationship. As [the Supreme Court] has stated: "The privilege is given on grounds of public policy in the belief that the benefits

---

[1] DFEH filed a similar petition for writ of mandate, which we summarily denied as well. (*Dept. of Fair Employment & Housing v. Superior Court* (Aug. 20, 2019, D076317).) DFEH filed its own petition for review, but the Supreme Court denied the petition. (*Dept. of Fair Employment & Housing v. Superior Court* (Oct. 9, 2019, S257728).) In its return to Wood's petition, filed in this proceeding, DFEH relies on exhibits to its own petition for writ of mandate. DFEH has not filed a request for judicial notice or attempted in any other proper manner to bring those exhibits to our attention in this proceeding. We therefore will not consider them. Nonetheless, it does not appear that considering the exhibits would have a material effect on our conclusions here, given DFEH's verified factual statements in its return, which cover similar ground.

derived therefrom justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence." [Citations.]' [Citation.] '[T]he privilege is absolute and disclosure may not be ordered, without regard to relevance, necessity or any particular circumstances peculiar to the case.' " (*Costco*, *supra*, 47 Cal.4th at p. 732.)

"The rule excluding the testimony of an attorney as to confidential communications made to him by his client must be strictly construed, as it has a tendency to suppress relevant facts that may be necessary for a just decision." (*Brunner v. Superior Court* (1959) 51 Cal.2d 616, 618.) "The privilege is also to be strictly construed 'where the [attorney-client] relationship is not clearly established.' " (*Uber Technologies, Inc. v. Google LLC* (2018) 27 Cal.App.5th 953, 967.)

For purposes of the privilege, a "client" is "a person who . . . consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity . . . ." (Evid. Code, § 951.) A "confidential communication between client and lawyer," which is protected by the privilege, is "information transmitted between a client and his or her lawyer in the course of that relationship and in confidence . . . ." (*Id*., § 952.) The client is the holder of the privilege (*id*., § 953) and may prevent disclosure of a privileged communication by another person (*id*., § 954).

"The statute treats the term 'confidential communication between client and lawyer' as one that requires further definition, and the definition it provides extends only to that information transmitted '*in the course of* [the attorney-client] relationship.' (Evid. Code, § 952, italics added.) The same definition also refers to 'those who are present to *further the interest of the client in the consultation*' and 'the *accomplishment of*

10

*the purpose* for which the lawyer is consulted.' (*Ibid*., italics added.)  A similar focus is plain in related definitions of the Evidence Code.  For example, the statute defines 'client' as someone who 'consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity.'  (*Id*., § 951.)  And a 'confidential communication between client and lawyer,' according to the statute, 'includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.'  (*Id*., § 952.)  These references cut against an understanding of the privilege in this context as encompassing every conceivable communication a client and attorney share, and instead link the privilege to communications that bear some relationship to the provision of legal consultation."  (*Los Angeles County Bd. of Supervisors v. Superior Court* (2016) 2 Cal.5th 282, 294-295 (*Los Angeles County*).)

Indeed, the statutes make clear that the privilege does not apply simply because a person discusses a legal matter with an attorney.  "Significantly, a communication is not privileged, even though it may involve a legal matter, if it has no relation to any professional relationship of the attorney with the client.  [Citation.]  Moreover, it is not enough that the client seek advice from an attorney; such advice must be sought from the attorney 'in his professional capacity.'  ([Evid. Code,] § 951.)"  (*People v. Gionis* (1995) 9 Cal.4th 1196, 1210 (*Gionis*); accord, *City & County of San Francisco v. Superior Court* (1951) 37 Cal.2d 227, 235 ["[O]nly communications made to an attorney in the course of professional employment are privileged."]; *League of California Cities v. Superior Court* (2015) 241 Cal.App.4th 976, 989.)

11

It is well-settled that a public entity enjoys an attorney-client relationship with its lawyers and the attorney-client privilege protects communications made in the course of that relationship. (See, e.g., *Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 371 (*Roberts*).) For example, "[a] city council needs freedom to confer with its lawyers confidentially in order to obtain adequate advice, just as does a private citizen who seeks legal counsel, even though the scope of confidential meetings is limited by this state's public meeting requirements. [Citations.] The public interest is served by the privilege because it permits local government agencies to seek advice that may prevent the agency from becoming embroiled in litigation, and it may permit the agency to avoid unnecessary controversy with various members of the public." (*Id*. at pp. 380-381.)

It is also well-settled that lawyers who prosecute actions, in an exercise of a public entity's police power, occupy a unique position in this context. For example, a district attorney "is not an 'attorney' who represents a 'client' as such. He is a public officer, under the direct supervision of the Attorney General [citation], who 'represents the sovereign power of the people of the state, by whose authority and in whose name all prosecutions must be conducted.' " (*Shepherd v. Superior Court* (1976) 17 Cal.3d 107, 122 (*Shepherd*).) "The prosecutor is a public official vested with considerable discretionary power to decide what crimes are to be charged and how they are to be prosecuted. [Citations.] In all his activities, his duties are conditioned by the fact that he 'is the representative not of any ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but

12

that justice shall be done.  As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer.' " (*People v. Superior Court* (*Greer*) (1977) 19 Cal.3d 255, 266 (*Greer*).)

"One of the reasons often cited for the institution of public prosecutions is that 'Americans believed that an officer in a position of public trust could make decisions more impartially than could the victims of crimes or other private complainants,' persons who often brought prosecutions under the older English system of criminal justice. [Citations.]  This advantage of public prosecution is lost if those exercising the discretionary duties of the district attorney are subject to conflicting personal interests which might tend to compromise their impartiality.  In short, the prosecuting attorney ' "is the representative of the public in whom is lodged a discretion which is not to be controlled by the courts, or *by an interested individual*." ' "  (*Greer*, *supra*, 19 Cal.3d at p. 267.)

These principles, moreover, are not limited to criminal prosecutions.  (*People ex rel. Clancy v. Superior Court* (1985) 39 Cal.3d 740, 746 (*Clancy*).)  "Indeed, it is a bedrock principle that a government attorney prosecuting a public action on behalf of the government must not be motivated solely by a desire to win a case, but instead owes a duty to the public to ensure that justice will be done." (*County of Santa Clara v. Superior Court* (2010) 50 Cal.4th 35, 57.)  "A fair prosecution and outcome in a proceeding brought in the name of the public is a matter of vital concern both for defendants and for the public, whose interests are represented by the government and to whom a duty is

13

owed to ensure that the judicial process remains fair and untainted by an improper motivation on the part of attorneys representing the government." (*Ibid*.)

For example, in actions by state and local agencies to establish paternity and for child support, as well as other similar actions, the person benefitted by the action does not enjoy an attorney-client relationship with the public entity lawyers prosecuting the action. "The statutory scheme empowers the district attorney [now local child support agency, see Fam. Code, § 17404] to establish, modify and enforce support obligations 'in the name of the county on behalf of the child, children or caretaker parent.' [Citation.] The purpose of such actions is to provide a direct procedure for a county to recoup public assistance, and to assist parents with limited resources to enforce support obligations so that public funds are not again unnecessarily expended. [Citations.] *Notwithstanding the collateral benefit to the custodial parent, the 'client' in such actions remains the county*." (*Monterey County v. Cornejo* (1991) 53 Cal.3d 1271, 1284, italics added (*Monterey County*); accord, *Jager v. County of Alameda* (1992) 8 Cal.App.4th 294, 297.) Family Code section 17406 is declarative of existing law, and it provides, "In all actions involving paternity or support, including, but not limited to, other proceedings under this code, and under Division 9 (commencing with Section 10000) of the Welfare and Institutions Code, the local child support agency and the Attorney General represent the public interest in establishing, modifying, and enforcing support obligations. No attorney-client relationship shall be deemed to have been created between the local child support agency or Attorney General and any person by virtue of the action of the local

14

child support agency or the Attorney General in carrying out these statutory duties."
(Fam. Code, § 17406, subd. (a).)

## II

### *DFEH Powers and Procedures*

The authority of DFEH is found in the Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.).  FEHA prohibits discrimination in employment and housing accommodations on the basis of protected characteristics, including sex and gender (*id*., §§ 12940 et seq., 12955 et seq.), and it incorporates the Unruh Civil Rights Act's prohibitions on discrimination in public accommodations (*id*., § 12948).  These prohibitions reflect the strong and longstanding public policy of this state to protect the right of all persons to seek employment, obtain housing, and otherwise participate in public life free of discrimination.  (Gov. Code, § 12920; Civ. Code, § 51, subd. (b).)  "The [Unruh Civil Rights] Act expresses a state and national policy against discrimination on arbitrary grounds.  [Citation.]  Its provisions were intended as an active measure that would create and preserve a nondiscriminatory environment in California business establishments by 'banishing' or 'eradicating' arbitrary, invidious discrimination by such establishments."  (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 167; accord, *White v. Square, Inc.* (2019) 7 Cal.5th 1019, 1025.)  FEHA's provisions, including the establishment of DFEH, are "an exercise of the police power of the state for the protection of the welfare, health, and peace of the people of this state."  (Gov. Code, § 12920.)

15

Under FEHA, DFEH is tasked with, among other things, receiving, investigating, conciliating, mediating, and prosecuting complaints of unlawful discrimination. (Gov. Code, § 12930, subd. (f).) Any person who claims to have suffered discrimination or other unlawful practice may file a complaint with DFEH. (*Id*., § 12960, subd. (c).) If the complaint alleges facts sufficient to show a violation, DFEH "shall make [a] prompt investigation in connection therewith." (*Id*., § 12963.) The investigation may include investigative subpoenas, written interrogatories, requests for deposition, and requests for production of documents. (*Id*., §§ 12963.1, 12963.2, 12963.3, 12963.4.) These discovery tools may be enforced by court order. (*Id*., § 12963.5; see generally *Dept. of Fair Employment & Housing v. Superior Court* (2002) 99 Cal.App.4th 896, 901.)

If DFEH determines that a violation has occurred, it will attempt to "eliminate the unlawful employment practice complained of by conference, conciliation, and persuasion." (Gov. Code, § 12963.7, subd. (a).) If this attempt fails, DFEH may, in its discretion, "bring a civil action in the name of the department on behalf of the person claiming to be aggrieved." (*Id*., § 12965, subd. (a); see Cal. Code Regs., tit. 2, § 10031, subd. (c) [identifying factors].) "In any civil action, the person claiming to be aggrieved shall be the real party in interest and shall have the right to participate as a party and be represented by that person's own counsel." (Gov. Code, § 12965, subd. (a).) If DFEH decides not to file a civil action, the complaining party may file an action in his or her own name. (*Id*., § 12965, subd. (b).)

DFEH maintains a website that, among other things, provides the public with information about its practices and procedures. On one page, DFEH provides answers to

16

frequently asked questions. In response to one question, "Does DFEH represent complainants?" DFEH provides the following answer: "No. During the investigation, DFEH acts as an objective fact-finder, gathering evidence to determine whether the complainant's allegations can be proven. DFEH does not represent either the complainant or the respondent. [¶] If the investigation establishes that there is evidence to support the complainant's allegations, and the parties do not reach a settlement, DFEH's Legal Division reviews the case for potential litigation in court. DFEH has attorneys who prepare and file cases in court. [¶] When DFEH decides to sue, it files a civil lawsuit in the name of the Department of Fair Employment and Housing against the employer. DFEH attorneys represent the Department, not the individual complainant. The complainant is a real party in interest in the lawsuit. [¶] Although the assigned DFEH attorney is not the complainant's personal legal advisor, the complainant's interests are important in the litigation, and the complainant receives 100% of any remedies recovered, with the exception of attorney fees and costs. DFEH does not charge complainants attorney fees or expert witness fees, nor does it take a percentage of any award or settlement."[2]

_____

[2]    By separate order, we granted Crunch's request for judicial notice of several pages from DFEH's website and other DFEH public statements. While we may not judicially notice the truth of any statement in these materials, we may take notice of the fact that they were made to the public. (See *Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063-1064; *Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 518.)

## III

### *Wood's Communication with DFEH Lawyers*

Wood contends the trial court erred by granting Crunch's motion to compel production of an email she sent to DFEH lawyers during their investigation of her complaint against Crunch.  "A trial court's determination of a motion to compel discovery is reviewed for abuse of discretion.  [Citation.]  An abuse of discretion is shown when the trial court applies the wrong legal standard.  [Citation.]  However, when the facts asserted in support of and in opposition to the motion are in conflict, the trial court's factual findings will be upheld if they are supported by substantial evidence.  [Citations.]  The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship.  [Citation.]  Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply."  (*Costco*, *supra*, 47 Cal.4th at p. 733.)

The central issue in this proceeding is whether Wood's email to DFEH lawyers was transmitted in the course of an attorney-client relationship, within the meaning of Evidence Code section 952, and was therefore privileged.  "The question of whether an attorney-client relationship exists is one of law.  [Citations.]  However, when the evidence is conflicting, the factual basis for the determination must be determined before the legal question is addressed."  (*Responsible Citizens v. Superior Court* (1993)

18

16 Cal.App.4th 1717, 1733.) Wood primarily relies on her declaration, where she asserted, "Throughout communications with the DFEH, I thought the DFEH was helping me with a legal dispute and believed that all conversations I had with DFEH lawyers were confidential." She also claimed in a deposition that DFEH represents her in the current litigation, though DFEH consistently denied such representation in its discovery responses. In this court, Wood's argument is that, regardless whether DFEH represented her, the attorney-client privilege should apply to her communication with DFEH lawyers because she was seeking legal advice from them. For its part, DFEH asserts that its lawyers "provided legal advice to Wood" and "shared DFEH's legal analysis with her in relation to her DFEH complaint against Crunch Fitness."[3]

Ordinarily, when a party seeks legal advice from a lawyer, and the lawyer provides such advice, an attorney-client relationship is formed. (*Beery v. State Bar* (1987) 43 Cal.3d 802, 811.) The formation of such a relationship imposes fiduciary duties, including a duty of care, on the attorney. (*Streit v. Covington & Crowe* (2000) 82 Cal.App.4th 441, 446.) But here, as Wood acknowledges, she did not have an attorney-client relationship with DFEH in this sense. She does not claim that DFEH lawyers represented her or served as her personal legal counsel, and she does not seek to

---

[3] DFEH's factual assertions were not before the trial court when it ruled on Crunch's motion to compel. We could simply disregard them. (See *Pomona Valley Hospital Medical Center v. Superior Court* (2013) 213 Cal.App.4th 828, 835, fn. 5 ["Writ review does not provide for consideration of evidence not before respondent court at the time of its ruling."].) But we exercise our discretion to consider them here, because we foresee no prejudice to Crunch (or Wood) and these assertions help to provide a complete picture of the factual circumstances at issue in this important matter.

19

impose any fiduciary duties on them. Similarly, consistent with its public and private statements, DFEH admits, "At all relevant times, Hawn and Chan were acting in their capacity *as DFEH attorneys* in the process of assessing Wood's allegations and her claims under the Unruh Act." (Italics added.)

Wood contends, instead, that the attorney-client relationship necessary for the privilege is not the same attorney-client relationship that exists in other contexts. She argues that the attorney-client privilege applies whenever a person speaks with a lawyer about a legal matter. We disagree with this interpretation of the attorney-client privilege.

The attorney-privilege requires something more than simply speaking to an attorney about a legal matter. (*Los Angeles County*, *supra*, 2 Cal.5th at pp. 294-295; *Gionis*, *supra*, 9 Cal.4th at p. 1210.) To be a client for purposes of the privilege, a person must "consult[] a lawyer for the purpose of retaining the lawyer or securing legal service or advice from him *in his professional capacity* . . . ." (Evid. Code, § 951, italics added.) Likewise, a privileged communication must be "transmitted between a client and his or her lawyer *in the course of that relationship* . . . ." (*Id*., § 952, italics added.)

As our Supreme Court has explained, "We cannot endorse the Court of Appeal's apparent view that the attorney-client privilege applies whenever issues touching upon legal matters are discussed with an attorney. That has never been the law. Significantly, a communication is not privileged, even though it may involve a legal matter, if it has no relation to any professional relationship of the attorney with the client. [Citation.] Moreover, it is not enough that the client seek advice from an attorney; such advice must

20

be sought from the attorney 'in his professional capacity.' ([Evid. Code,] § 951.)" (*Gionis*, *supra*, 9 Cal.4th at p. 1210.)

In *Gionis*, our Supreme Court considered whether the attorney-client privilege covered statements made by the defendant to a lawyer after the lawyer told the defendant he would not represent him. (*Gionis*, *supra*, 9 Cal.4th at p. 1209.) Although the Supreme Court did not announce "a bright line rule that *any* communication made after an attorney's refusal of representation is unprivileged as a matter of law," it was nonetheless persuaded "that a person could have no reasonable expectation of being represented by an attorney after the attorney's explicit refusal to undertake representation. [Citation.] Moreover, evidence of an attorney's express refusal of representation may give rise to a reasonable inference that, in continuing to speak to the attorney, the person is not thereafter consulting with the attorney for advice 'in his professional capacity.' " (*Id*. at p. 1211.)

Similarly here, the DFEH has consistently maintained that it does not represent complainants in general or Wood in particular. On its public website, it disclaims any such representation: During its investigation, "DFEH does not represent either the complainant or the respondent." During litigation, "DFEH attorneys represent the Department, not the individual complainant." In its letters notifying Crunch of Wood's complaint, DFEH stated that it " 'serves as a neutral fact-finder and represents the state of California rather than the complaining party [i.e., Wood].' " DFEH lawyers are counsel of record only for the Department, and their discovery responses in the underlying litigation reflect that fact. These statements are consistent with DFEH's role as a civil

21

enforcement agency of the government. (See *Monterey County*, *supra*, 53 Cal.3d at p. 1284; *Clancy*, *supra*, 39 Cal.3d at p. 746; see also *Greer*, *supra*, 19 Cal.3d at p. 266; *Shepherd*, *supra*, 17 Cal.3d at p. 122.) The fact that DFEH has consistently disclaimed representation strongly weighs against the finding of an attorney-client relationship here. (See *Gionis*, *supra*, 9 Cal.4th at p. 1211; see also *Fox v. Pollack* (1986) 181 Cal.App.3d 954, 959 ["Except for those situations where an attorney is appointed by the court, the attorney-client relationship is created by some form of contract, express or implied, formal or informal."].)

Wood has not shown that any other basis exists for an attorney-client relationship that would support the application of the privilege. Wood points out that the privilege protects a prospective client's communications with a lawyer even if the lawyer is never retained. (See, e.g., *Gionis*, *supra*, 9 Cal.4th at p. 1208.) But, as discussed above, DFEH lawyers cannot represent Wood. Wood was not a prospective client seeking representation, so she cannot claim the privilege on this basis. Outside the context of a prospective client, "an actual attorney-client relationship is required to sustain claims of the privilege." (Tuft et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2019) ¶ 3:26.2.) Wood has not established an actual attorney-client relationship for reasons we have already discussed.

Wood relies on two Court of Appeal opinions that broadly state that an attorney-client relationship is formed whenever a person consults an attorney for the purpose of obtaining the attorney's legal advice. (See *Edwards Wildman Palmer LLP v. Superior Court* (2014) 231 Cal.App.4th 1214, 1226 (*Edwards Wildman*); *Kerner v. Superior Court*

22

(2012) 206 Cal.App.4th 84, 116-117 (*Kerner*).) Our Supreme Court in *Gionis* held, however, that such a broad proposition is not always correct. (*Gionis*, *supra*, 9 Cal.4th at p. 1210.) Our analysis of the statutes above confirms that fact. (See Evid. Code, §§ 951, 952.) And this conclusion makes sense. The attorney-client privilege is not an end in itself. It is enforced because it is a necessary prerequisite for lawyers to fulfill the significant duties imposed by the attorney-client relationship. Wood and DFEH seek to decouple the privilege from the attorney-client relationship itself. Their efforts are unpersuasive.

In any event, the opinions cited by Wood are inapposite. *Edwards Wildman* considered whether "the attorney-client privilege applies to intrafirm communications between attorneys concerning disputes with a current client, when that client later sues the firm for malpractice." (*Edwards Wildman*, *supra*, 231 Cal.App.4th at p. 1219.) The court found that it could apply, but "only when a genuine attorney-client relationship exists" (*id*. at p. 1234), i.e., *not* whenever a legal matter is discussed with a fellow attorney. *Kerner* considered whether the privilege covered communications between two attorneys unrelated to a current or former client. (*Kerner*, *supra*, 206 Cal.App.4th at p. 92.) The attorney who claimed to be the client testified that she sought legal advice from the other attorney regarding various litigation matters. (*Id*. at p. 118.) The other attorney stated that he advised the first attorney on legal issues and communicated on her behalf with other legal counsel. (*Ibid*.) Under these circumstances, the Court of Appeal held that the first attorney had established the existence of an attorney-client relationship with the second, and the privilege applied. (*Id*. at pp. 118-119.) Given their factual

23

dissimilarities, Wood's reliance on these opinions is unpersuasive. And, at base, they confirm that an attorney-client relationship is necessary for the privilege to apply, a relationship that is lacking here.

Wood argues that her relationship with DFEH is sufficient to invoke the attorney-client privilege because DFEH investigates complaints by members of the public like Wood, it seeks relief on their behalf, and its activities embody California's strong public policy against unlawful discrimination. But, given that DFEH lawyers do not represent complainants like Wood, this mere convergence of interests is insufficient to establish an attorney-client relationship for purposes of the privilege. Crime victims have a similar convergence of interests with prosecutors, and prosecutors routinely seek specific relief on behalf of victims in the form of restitution, but no attorney-client relationship exists between them. (*Greer*, *supra*, 19 Cal.3d at p. 266; *Shepherd*, *supra*, 17 Cal.3d at p. 122.) Similarly, local child support agencies seek and enforce specific relief—child and spousal support—on behalf of members of the public, but no attorney-client relationship exists there either. (*Monterey County*, *supra*, 53 Cal.3d at p. 1284.) It seems logical that, in all of these situations, the protection of the attorney-client privilege would lead to more candor from the benefitted parties and more effective prosecution efforts, as the DFEH asserts. But that result, however positive, cannot create an attorney-client relationship where none exists.

Moreover, to the extent the necessity for secrecy motivates Wood and DFEH, the official information privilege under Evidence Code section 1040 is the government's exclusive means for protecting such information. "Section 1040 of the Evidence Code

24

'represents *the exclusive means* by which a public entity may assert a claim of governmental privilege based on the necessity for secrecy.' " (*Shepherd*, *supra*, 17 Cal.3d at p. 123, fn. omitted.) Official information, for purposes of the privilege, means "information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made." (Evid. Code, § 1040, subd. (a).) A public entity has an absolute privilege to refuse to disclose such information if disclosure is forbidden by state or federal law. (*Id.*, § 1040, subd. (b)(1).) If disclosure is not forbidden, the public entity may still assert a qualified privilege. (*Id.*, § 1040, subd. (b)(2).) The qualified privilege generally applies if "[d]isclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice[.]" (*Ibid.*)

This court has recognized, in the analogous context of a district attorney, that the official information privilege applies to information obtained in the course of a governmental investigation. "[B]ecause the district attorney does not have 'a "client" as such,' confidentiality regarding the fruits of investigations of a public prosecutor are governed exclusively by Evidence Code section 1040, which controls the assertion of claims for governmental privilege for official information." (*People ex rel. Lockyer v. Superior Court* (2000) 83 Cal.App.4th 387, 399.) Although Wood argued in the trial court that the official information privilege applied, she has not raised that argument in this court. We therefore have no occasion to consider whether and to what extent the official information privilege would protect the email at issue here from disclosure.

25

Wood and DFEH rely on a number of federal district court opinions, mostly unpublished, which have found a privilege for communications between the EEOC and antidiscrimination complainants—even though federal courts recognize there is no actual attorney-client relationship between the EEOC and individual complainants (see, e.g., *Williams v. United States* (D.Ore. 1987) 665 F.Supp. 1466, 1471). We find the opinions cited by Wood and DFEH unpersuasive.

We note initially that the federal and state laws of privilege are distinct and somewhat divergent. Federal privileges are a matter of federal common law. (Fed. Rules Evid., rule 501, 28 U.S.C.) "Because the Federal Rules of Evidence provide that principles of common law govern rules of privilege, federal courts have the flexibility to develop rules of privilege on a case-by-case basis." (*OXY Resources Cal. LLC v. Superior Court* (2004) 115 Cal.App.4th 874, 888 (*OXY*).) "Unlike the federal courts, '[t]he courts of this state . . . are not free to create new privileges as a matter of judicial policy and must apply only those which have been created by statute. [Citations.]' [Citations.] Indeed, '[o]ur deference to the Legislature is particularly necessary when we are called upon to interpret the attorney-client privilege, because the Legislature has determined that evidentiary privileges shall be available only as defined by statute. [Citation.] Courts may not add to the statutory privileges except as required by state or federal constitutional law [citations], nor may courts imply unwritten exceptions to existing statutory privileges. [Citations.]' [Citation]. The area of privilege ' "is one of the few instances where the Evidence Code precludes the courts from elaborating upon the statutory scheme." ' " (*Id*. at pp. 888-889, fn. omitted; accord, *Wells Fargo Bank v.*

26

*Superior Court* (2000) 22 Cal.4th 201, 206 ["The privileges set out in the Evidence Code are legislative creations; the courts of this state have no power to expand them or to recognize implied exceptions."]; *Roberts*, *supra*, 5 Cal.4th at p. 373.)

The federal opinions cited by Wood and DFEH reflect a flexible view of the attorney-client privilege that we are prohibited by statute from adopting. Many of the opinions that articulate their legal reasoning rely on the federal joint defense or common interest privilege, which applies to certain communications even in the absence of an actual attorney-client relationship. (See, e.g., *United States v. Gumbaytay* (M.D.Ala. 2011) 276 F.R.D. 671, 675-676 ["Accordingly, this court will follow [other courts] in recognizing that the common interest rule protects communications between a governmental agency and persons on whose behalf the governmental agency brings suit."]; *EEOC v. DiMare Ruskin, Inc.* (M.D.Fla. Feb. 15, 2012, No. 2:11-CV-158) 2012 U.S. Dist. LEXIS 24951 ["[The common interest privilege] protects communications between an individual, or the individual's attorney, and an attorney representing a person or entity that shares a common interest with the individual regarding a legal matter of common interest."]; *EEOC v. Chemtech International Corp.* (S.D.Tex. May 18, 1995, Civ. A. No. H-94-2848) 1995 U.S. Dist. LEXIS 21877 ["In addition, because the EEOC and the private citizen have many identical interests, the attorney-client privilege is essentially a joint prosecution privilege that extends to communications between a party and the attorney for a co-litigant."]; *EEOC v. HBE Corp.* (E.D.Mo. May 19, 1994, No. 4:93-CV-722) 1994 U.S. Dist. LEXIS 9326 ["A client may refuse to disclose confidential communications made for purpose of

27

facilitating or rendering professional legal services to the client by his attorney or a lawyer representing another in a matter of common interest."].)

This federal joint defense or common interest privilege recognizes "an implied attorney-client relationship" between a party and the lawyer for a *different* party, where the parties share a common interest. (See, e.g., *United States v. Henke* (9th Cir. 2000) 222 F.3d 633, 637.) Whatever the policy merits of this privilege, it is not available in California. "The 'joint defense privilege' and the 'common interest privilege' have not been recognized by statute in California." (*OXY*, *supra*, 115 Cal.App.4th at p. 889.) California has not adopted the federal view that "there is an expanded attorney-client relationship encompassing all parties and counsel who share a common interest." (*Ibid.*) California requires a genuine attorney-client relationship for the privilege to apply. (Evid. Code, § 952; *Los Angeles County*, *supra*, 2 Cal.5th at pp. 294-295; *Gionis*, *supra*, 9 Cal.4th at p. 1210.) Federal opinions that rely on the joint defense privilege or common interest privilege, whether expressly or impliedly, are therefore unpersuasive.[4]

Other federal opinions cited by Wood and DFEH recognize that no genuine attorney-client relationship exists between the EEOC and individual complainants, but they nonetheless find a privilege based on a "de facto" attorney-client relationship. (See,

---

[4] California recognizes a common interest *doctrine*, but it is not at issue here. The common interest doctrine *preserves* the privilege "when parties with common interests disclose privileged communications to each other. The privilege survives disclosure to a party with a common interest only if it is necessary to accomplish the privilege holder's purpose in seeking legal advice. The doctrine extends no further than this because in California there is no independent statutory joint defense or common interest *privilege*, and California courts are not authorized to establish one." (*Citizens for Ceres v. Superior Court* (2013) 217 Cal.App.4th 889, 916-917.)

28

e.g., *Bauman v. Jacobs Suchard, Inc.* (N.D.Ill. 1990) 136 F.R.D. 460, 461 (*Bauman*) ["While there does not appear to be any formal attorney-client relationship, the EEOC, through its attorneys, are essentially acting as *de facto* counsel for the employees."]; *EEOC v. Tony's Lounge, Inc.* (S.D.Ill. April 9, 2010, No. 08-CV-677) 2010 WL 1444874, at *2 [same]; *EEOC v. Scrub, Inc.* (N.D.Ill. May 25, 2010, No. 09-C-4228) 2010 WL 2136807, at *7 [same]; see also *National Labor Relations Bd. v. Jackson Hospital Corp.* (D.D.C. 2009) 257 F.R.D. 302, 311 ["The de facto attorney-client privilege applies in situations where there is no actual attorney-client relationship, but one entity is acting like the other entity's attorney."].) The nature and extent of such a "de facto" attorney-client relationship is unknown. It appears to be an application of the federal joint defense or common interest privilege described above. In any event, California does not recognize such a de facto relationship that would support the attorney-client privilege, in the absence of an actual attorney-client relationship.

Still other federal opinions cited by Wood and DFEH assume that defendants in antidiscrimination cases will be represented by their own lawyers, and they focus on the alleged inequity between those represented defendants and unrepresented complainants. (See, e.g., *EEOC v. International Profit Associates, Inc.* (N.D.Ill. 2002) 206 F.R.D. 215, 219 (*IPA*) ["This Court expressed in oral argument . . . employers in these types of cases have available the protection of the attorney-client privilege whereas there is no sound reason why employees would not."]; *Bauman*, *supra*, 136 F.R.D. at pp. 461-462 ["There is no sound reason why employers in such cases should have available the protection of the attorney-client privilege whereas employees would not."].) This view of the equities

29

appears somewhat simplistic, given the presence of the government as a party plaintiff. (See *Clancy*, *supra*, 39 Cal.3d at p. 746 [observing that a prosecutor has "the vast power of the government available to him"].)  But, in any event, even crediting the view of these federal district courts, we cannot use such policy considerations to extend the attorney-client privilege beyond its statutory bounds.

Finally, some federal opinions appear to adopt the principle that the privilege always applies whenever a person seeks legal advice from a lawyer.  (See, e.g., *IPA*, *supra*, 206 F.R.D. at p. 218; *EEOC v. Georgia-Pacific Corp.* (D.Ore. Nov. 10, 1975, No. 69-101) 1975 U.S. Dist. LEXIS 15377.)  These opinions are unpersuasive because this principle is contrary to California law, which requires an attorney-client relationship, as discussed above.  (Evid. Code, § 352; *Los Angeles County*, *supra*, 2 Cal.5th at pp. 294-295; *Gionis*, *supra*, 9 Cal.4th at p. 1210.)

In sum, Wood has not met her burden of establishing the preliminary facts necessary to support the privilege, i.e., "a communication made in the course of an attorney-client relationship."  (*Costco*, *supra*, 47 Cal.4th at p. 733.)  Wood had no attorney-client relationship with DFEH lawyers.  They represented DFEH, not Wood, and her discussion of legal matters with them is insufficient to create an attorney-client

relationship under the circumstances here.  Wood has not shown the trial court erred by ordering her to produce the email in question.[5]

## DISPOSITION

The petition is denied.  The stay ordered by the Supreme Court on October 9, 2019 is vacated.  Crunch is awarded its costs.  (Cal. Rules of Court, rule 8.493(a).)


GUERRERO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


O'ROURKE, J.

---

[5]    In its return, Crunch raises its own claims for relief based on other alleged trial court errors in handling its motion to compel.  We decline to consider them because Crunch did not file its own petition for writ of mandate.  Crunch may not obtain review of the trial court's order by way of its response to Wood's writ petition.  (*Campbell v. Superior Court* (2005) 132 Cal.App.4th 904, 922.)